**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 24-CR- 352-CNS

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     TIMOTHY A. MCPHEE, and
2.     HEATH J. POSEY,

      Defendants.

---

**INDICTMENT**

---

The Grand Jury charges:

**INTRODUCTION**

At all times relevant to this Indictment:

**The Defendants and Relevant Entities**

1.     Defendant TIMOTHY A. MCPHEE ("MCPHEE") was a United States ("U.S.") citizen residing in Estes Park, Colorado.

2.     MDH FAMILY TRUST was a purported trust controlled by MCPHEE. MCPHEE opened and maintained bank accounts in the name of MDH FAMILY TRUST and had complete control over and beneficial enjoyment of the funds in those accounts, which he used for personal expenses and investments.

3.     From at least in or around 2019 until in or around September 2023, MCPHEE co-owned and operated a business called PRIVATE BANKING CONCEPTS ("PBC") through which he promoted and sold purported financial and tax-mitigation strategies at virtual and in-person seminars nationwide, including in Colorado.

4.      The ROI CASH FLOW FUND LP ("ROI CASH FLOW FUND") was a purported investment fund founded by MCPHEE in or around June 2022.

5.      MCPHEE operated the ROI CASH FLOW FUND as a trade name ("doing business as" or "d/b/a") for a Colorado limited liability company ("LLC") that he established and caused to be established in or around August 2017 called ROI LTD. MCPHEE also operated the ROI CASH FLOW FUND through a Colorado limited partnership ("LP") that he established and caused to be established in or around October 2023.

6.      UNINDICTED CO-CONSPIRATOR 1 ("CC-1") was a U.S. citizen residing in Fort Collins, Colorado and Castle Rock, Colorado. From in or around at least 2020 to in or around October 2023, CC-1 worked for PBC under MCPHEE's direction and received compensation for his role.

7.      Defendant HEATH J. POSEY ("POSEY") was a U.S. citizen residing in Denver, Colorado. From in or around January 2023 until at least in or around May 2024, POSEY served as the Chief Financial Officer ("CFO") for the ROI CASH FLOW FUND and received compensation for his role.

8.      OPUS ADMINISTRATION SERVICES LLC was a business entity that MCPHEE and POSEY established and caused to be established in Wyoming in or around June 2023. MCPHEE and POSEY created OPUS ADMINISTRATION SERVICES LLC, among other reasons, to provide administrative and accounting services to the various purported investment funds MCPHEE and POSEY established and operated, including the ROI CASH FLOW FUND. Among other expenses, OPUS ADMINISTRATION SERVICES LLC paid POSEY's salary for his role with the ROI CASH FLOW FUND beginning in or around October 2023.

9.      INDIVIDUAL 1 was a United Kingdom ("U.K.") citizen residing in England

and in Dubai, United Arab Emirates ("UAE").

**Hemingway Global Capital**

10.    HEMINGWAY GLOBAL CAPITAL ("HEMINGWAY") was a purported foreign exchange ("forex") trading fund operated by INDIVIDUAL 1, and others known and unknown to the Grand Jury, beginning in or around mid-2019. HEMINGWAY was also referred to at various times as FALCON GLOBAL CAPITAL.

11.    Forex trading referred to the buying of one currency and selling of another currency.

12.    From in or around early 2020 until in or around 2023, MCPHEE promoted HEMINGWAY at virtual and in-person seminars hosted by PBC. At these seminars, MCPHEE occasionally introduced INDIVIDUAL 1 to the audience via videoconference so INDIVIDUAL 1 could address the audience directly. MCPHEE and INDIVIDUAL 1 told investors that HEMINGWAY employed highly skilled forex traders and used the profits from forex trading to pay investors a monthly 3% return (hereinafter, "monthly payout") on their principal investment.

13.    In or around early 2020, INDIVIDUAL 1 agreed to pay MCPHEE a commission fee equal to 1% of the funds invested in HEMINGWAY by investors that MCPHEE recruited. MCPHEE directed INDIVIDUAL 1 to deposit these commission fees into bank accounts MCPHEE opened and maintained in the name of MDH FAMILY TRUST, among other accounts. In total, from in or around 2020 through in or around 2023, MCPHEE earned about $3 million in commission fees from INDIVIDUAL 1.

14.    When MCPHEE promoted HEMINGWAY to investors, some responded with concerns based on information they discovered online. Investors sent online news articles to MCPHEE that discussed INDIVIDUAL 1's alleged involvement in fraudulent

3

conduct in the U.K., along with online sources warning that HEMINGWAY could be a scam. In response to these concerns, MCPHEE defended INDIVIDUAL 1's reputation and assured others that he had conducted extensive due diligence on INDIVIDUAL 1 and HEMINGWAY.

15.     Beginning in at least late 2021, HEMINGWAY started missing monthly payouts to some investors. In response to investors' complaints, MCPHEE said that the missing payouts were caused by delays in the banking system and issues sending money from one country to another.

### The ROI Cash Flow Fund
Operations from June 2022 to December 2022

16.     In or around June 2022, MCPHEE launched the ROI CASH FLOW FUND as a U.S.-based feeder fund for HEMINGWAY. Up until that point, investors sent the money they wanted to invest in HEMINGWAY directly to bank accounts controlled by INDIVIDUAL 1. MCPHEE promoted the ROI CASH FLOW FUND as a better alternative to investing directly with HEMINGWAY but promised the same 3% monthly rate of return.

17.     MCPHEE told investors that the ROI CASH FLOW FUND would pool investors' funds in U.S. bank accounts and send those funds to HEMINGWAY in lump sums to be leveraged for forex trading. MCPHEE further told investors that HEMINGWAY would consistently repay the ROI CASH FLOW FUND a return on its investment, and MCPHEE would use the money from HEMINGWAY to make 3% monthly payouts to investors after a six-month seasoning period during which no payouts to investors would be made.

18.     MCPHEE and INDIVIDUAL 1 agreed to maintain their commission arrangement so that MCPHEE would receive a fee equal to 1% of all funds sent from the

4

ROI CASH FLOW FUND to HEMINGWAY.

19.    MCPHEE and INDIVIDUAL 1 further agreed that HEMINGWAY would reinvest the first roughly six months of payments from the ROI CASH FLOW FUND to HEMINGWAY and begin repaying the ROI CASH FLOW FUND in or around at least January 2023 so that the ROI CASH FLOW FUND could begin making 3% monthly payouts to its investors in or around January 2023.

20.    From in or around June 2022 until in or around November 2022, MCPHEE collected approximately $1.8 million in investor deposits into a bank account he controlled held in the name of ROI LTD with account number ending in 5222 at "Bank A." During that period, MCPHEE sent those funds to HEMINGWAY in monthly batches, as promised.

21.    As explained in further detail below, however, late 2022 was the last time MCPHEE used the ROI CASH FLOW FUND investors' funds as promised. After November 2022, the ROI CASH FLOW FUND did not send any investor funds to HEMINGWAY or any other entity to be leveraged for forex trading. Instead, from in or around January 2023 to in or around February 2024, MCPHEE and POSEY used investor funds to make monthly payouts to investors and misappropriated hundreds of thousands of dollars in investor funds for their own financial gain.

### COUNTS 1 – 4
**18 U.S.C. §§ 1343 & 2**
(Wire Fraud & Aiding and Abetting)

22.    The allegations set forth in paragraphs 1 through 21 of this Indictment are re-alleged and incorporated as if set forth fully herein.

23.    From in or around January 2023 until at least in or around May 2024, in the District of Colorado and elsewhere, defendants TIMOTHY A. MCPHEE and HEATH J. POSEY, together with others known and unknown to the Grand Jury, knowingly and with

5

the intent to defraud, devised and intended to devise a scheme to defraud investors, and to obtain money and property from such investors, by means of materially false and fraudulent pretenses, representations, and promises, and aided and abetted in the same.

**The Scheme**

The scheme to defraud operated, in substance, as follows.

24.    Beginning in or around January 2023, the ROI CASH FLOW FUND was operated primarily by three individuals: MCPHEE, POSEY, and CC-1. MCPHEE held himself out as the senior partner of the ROI CASH FLOW FUND. In or around January 2023, MCPHEE hired POSEY to serve as the CFO of the fund. Among other roles, POSEY tracked the money moving in and out of the ROI CASH FLOW FUND bank accounts and initiated wire transfers to investors. CC-1 held himself out as a partner of the fund and assisted MCPHEE in the creation of promotional materials and the recruitment of investors until his resignation in or around October 2023.

The Pitch to Investors

25.    MCPHEE, POSEY, and CC-1 promoted the ROI CASH FLOW FUND at in-person and virtual seminars hosted in Colorado and elsewhere, as well via private videoconference calls and email conversations with investors. MCPHEE, POSEY, and CC-1 also distributed promotional materials describing the investment opportunity via email. Those materials falsely described the ROI CASH FLOW FUND as an ultra-low risk opportunity for investors to earn a monthly 3% return on a loan to a third-party borrower.

26.    Promotional materials circulated to investors after in or around January 2023 falsely stated that the ROI CASH FLOW FUND operated as follows: (a) investors would make capital contributions (also referred to as "principal investments") to the ROI CASH FLOW FUND, (b) the ROI CASH FLOW FUND would lend investors' money to a

borrower, (c) the borrower would repay the ROI CASH FLOW FUND on a consistent basis using profits generated from engaging in forex trading, and (d) after a six-month seasoning period, the ROI CASH FLOW FUND would make monthly payouts to investors equal to 3% of their capital contributions. In reality, after in or around November 2022, the investors' funds were not sent to any third-party borrower for the purpose of forex trading.

27.    The materials also falsely claimed that the borrower, i.e., HEMINGWAY, had "made monthly payments to [its] lenders consistently since 2014," had "been profitable since 2007," and had a "[s]olid track record of earnings performance and repayment history." In reality, and as MCPHEE and POSEY knew, HEMINGWAY frequently missed monthly payouts to investors.

28.    Though HEMINGWAY was the "borrower" referred to in these promotional materials, the materials circulated to investors did not identify HEMINGWAY or INDIVIDUAL 1 by name. MCPHEE, POSEY, and CC-1 personally told some investors that the ROI CASH FLOW FUND's borrower was HEMINGWAY, but they omitted that information from others.

<u>Recruitment of Hemingway Investors into the ROI Cash Flow Fund</u>

29.    To bring money into the ROI CASH FLOW FUND, MCPHEE, POSEY, and CC-1 specifically targeted investors who had previously sent money to HEMINGWAY and were frustrated with HEMINGWAY's poor track record for making timely payouts each month. They identified such investors using spreadsheets that POSEY maintained, which tracked missing payouts owed to HEMINGWAY investors.

30.    MCPHEE, POSEY, and CC-1 recruited these investors into the ROI CASH FLOW FUND in part by stating that the ROI CASH FLOW FUND did not experience the same "banking issues" that caused HEMINGWAY to miss payouts. MCPHEE, POSEY,

and CC-1 offered to transfer HEMINGWAY investors' principal investments from HEMINGWAY to the ROI CASH FLOW FUND, and they encouraged these investors to send money directly to the ROI CASH FLOW FUND bank accounts to add additional funds to their principal investments. To incentivize these investors to add funds to their investment with the ROI CASH FLOW FUND, MCPHEE, POSEY, and CC-1 offered to waive the six-month seasoning period for new funds added by investors who had agreed to transfer their investment from HEMINGWAY to the ROI CASH FLOW FUND.

31.    Based on these representations, MCPHEE, POSEY, and CC-1 convinced dozens of investors to transfer their investment—referred to as a "loan agreement"—from HEMINGWAY to the ROI CASH FLOW FUND. Collectively, these investors had previously invested approximately $15 million with HEMINGWAY, and they sent hundreds of thousands of dollars to the ROI CASH FLOW FUND to increase their principal investments as well. Although these investors agreed to transfer their investment from HEMINGWAY to the ROI CASH FLOW FUND, the ROI CASH FLOW FUND never actually took possession of those investors' principal investments from HEMINGWAY.

<u>Recruitment of New Investors into the ROI Cash Flow Fund</u>

32.    To perpetuate the scheme and to bring in new capital, MCPHEE, POSEY, and CC-1 also targeted new investors who had not previously invested with HEMINGWAY. When promoting the ROI CASH FLOW FUND to investors who were unfamiliar with INDIVIDUAL 1 and HEMINGWAY, MCPHEE, POSEY, and CC-1 often did not identify HEMINGWAY or INDIVIDUAL 1 by name. MCPHEE even instructed CC-1 to omit this information from prospective investors.

33.    To invest in the ROI CASH FLOW FUND, new investors were required to agree to a six-month seasoning period during which the investor would not receive any

monthly payouts. There was also a 12-month or an 18-month "lock-up" period during which the investor could not take out their principal investment. By requiring new investors to agree to a seasoning period and a lock-up period, MCPHEE and POSEY were able to pay old investors with new investors' funds.

<u>ROI Cash Flow Fund Banking Activity</u>

*January 2023 to January 2024*

34.     In or around late 2022, Bank A closed the ROI LTD checking account (x5222). In or around November 2022, MCPHEE opened and caused to be opened a new checking account in the name of the ROI CASH FLOW FUND at Bank B with account number ending in 4429. MCPHEE added POSEY as a signatory on the account in or around March 2023.

35.     From in or around January 2023 to in or around January 2024, more than fifty investors deposited a total of approximately $7.6 million into the ROI CASH FLOW FUND account at Bank B (x4429). They did so based on the false representations from MCPHEE, POSEY, and CC-1 that the investors' funds would be sent to a borrower and leveraged for forex trading to generate 3% monthly payouts.

36.     Though MCPHEE, POSEY, and CC-1 represented to investors that their funds would be sent to a borrower to be leveraged for forex trading, the ROI CASH FLOW FUND did not send any investor funds to HEMINGWAY, nor to any other borrower for the purpose of engaging in forex trading, after in or around November 2022. And although MCPHEE, POSEY, and CC-1 represented to investors that a borrower (i.e., HEMINGWAY) repaid the ROI CASH FLOW FUND on a consistent basis using profits from forex trading, HEMINGWAY sent payments to the ROI CASH FLOW FUND that were erratic in frequency and amount. In total, HEMINGWAY repaid the ROI CASH

FLOW FUND only about a hundred thousand dollars.

37. To perpetuate the scheme, from in or around January 2023 to in or around January 2024, MCPHEE and POSEY used about $4.7 million in investor funds to make monthly payouts to investors from the ROI CASH FLOW FUND account at Bank B (x4429). Of the remaining investor funds in the ROI CASH FLOW FUND account at Bank B (x4429), MCPHEE spent about ninety thousand dollars on personal and business expenses. MCPHEE and POSEY also transferred and caused to be transferred approximately $2.4 million to a new bank account they opened and caused to be opened in or around April 2023 in the name of ROI LTD at Bank B with account number ending in 5936. MCPHEE and POSEY were signatories on this account, and they referred to it as the "reserve account."

38. MCPHEE misappropriated a substantial portion of the funds transferred to the ROI CASH FLOW FUND reserve account at Bank B (x5936) for his own financial gain. From in or around June 2023 to in or around December 2023, MCPHEE and POSEY transferred and caused to be transferred approximately $2.2 million in investor funds from the ROI CASH FLOW FUND reserve account at Bank B (x5936) to a bank account held in the name of MDH FAMILY TRUST at Bank B, account number ending in 4526. MCPHEE then used those investor funds to pay for personal expenses and investments.

*January 2024 to February 2024*

39. In or around mid-January 2024, the ROI CASH FLOW FUND accounts at Bank B were closed. Around that time, MCPHEE and POSEY opened and caused to be opened a new bank account in the name of the ROI CASH FLOW FUND at "Bank C" with account number ending in 1240. MCPHEE and POSEY were signatories on that account, and they transferred and caused to be transferred the remaining balance of approximately

10

$1 million in the ROI CASH FLOW FUND account at Bank B (x4429) to the ROI CASH FLOW FUND account at Bank C (x1240).

40.     From in or around January 2024 to in or around February 2024, MCPHEE and POSEY generated a few hundred thousand dollars from about three investors, which was deposited in the ROI CASH FLOW FUND account at Bank C (x1240). During this same time, MCPHEE and POSEY used some of the funds in the ROI CASH FLOW FUND account at Bank C to make monthly payouts to investors. MCPHEE and POSEY also transferred and caused to be transferred approximately $470,000 to a bank account at Bank C held in the name of OPUS ADMINISTRATION SERVICES LLC with account number ending in 1410. MCPHEE and POSEY controlled the OPUS ADMINISTRATION SERVICES LLC bank account and spent the funds in the account on expenses related to their mutual business endeavors, including the payment of POSEY's salary.

41.     In or around February 2024, the ROI CASH FLOW FUND stopped making monthly payouts to investors.

The May 2024 Investor Letter

42.     On or about May 23, 2024, MCPHEE and POSEY sent and caused to be sent a letter to the ROI CASH FLOW FUND investors via email. The letter, which was signed by MCPHEE, falsely stated that the ROI CASH FLOW FUND had sent all the funds it received to the borrower. Specifically, the letter stated: "[s]everal have requested funds back for a variety of reasons. To be direct, the funds were lent to the borrower, they have the funds, ROI does not." The letter further falsely stated that the ROI CASH FLOW FUND had not distributed "any monies to the General Partner" or paid the fund manager "any salary." In reality, MCPHEE and POSEY misappropriated hundreds of thousands of dollars in investor funds for their own financial gain.

11

**Use of the Wires**

43.     On or about the dates listed in the table below, in the District of Colorado and elsewhere, for the purpose of executing the scheme to defraud investors described above in paragraphs 24 through 42, defendants MCPHEE and POSEY transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the writings, signs, signals, pictures, and sounds set forth below.

| Count | Approx. Date | Approx. Amount | Description of Wire |
|---|---|---|---|
| 1 | 4/28/2023 | $400,000 | Transfer from a bank account held in the name of an entity with the initials A.T. to the ROI CASH FLOW FUND account at Bank B (x4429), causing an interstate wire |
| 2 | 7/27/2023 | $1,000,000 | Transfer from a bank account held in the name of an entity with the initials C.R. to the ROI CASH FLOW FUND account at Bank B (x4429), causing an interstate wire |
| 3 | 8/2/2023 | $200,000 | Transfer from a bank account held in the name of an investor with the initials J.H. to the ROI CASH FLOW FUND account at Bank B (x4429), causing an interstate wire |
| 4 | 10/2/2023 | $400,000 | Transfer from a bank account held in the name of an entity with the initials E.L.C.P. LLC to the ROI CASH FLOW FUND account at Bank B (x4429), causing an interstate wire |

In violation of Title 18, United States Code, Sections 1343 and 2.

**COUNT 5**
**18 U.S.C. § 1349**
(Conspiracy to Commit Wire Fraud)

44.     The allegations set forth in paragraphs 1 through 21 and 23 through 43 of this Indictment are re-alleged and incorporated as if set forth fully herein.

45.     From in or around January 2023 and continuing until at least in or around May 2024 in the District of Colorado and elsewhere, defendants TIMOTHY A. MCPHEE

and HEATH J. POSEY, acting interdependently and together with others known and unknown to the Grand Jury, conspired to commit wire fraud in violation of Title 18, United States Code, Section 1343, as charged in Counts 1 through 4.

## OBJECT OF THE CONSPIRACY

46.    From in or around January 2023 until at least in or around May 2024, it was the object of the conspiracy for MCPHEE and POSEY, together with others known and unknown to the Grand Jury, to recruit investors into the ROI CASH FLOW FUND, and to obtain money from such investors, for their own financial gain.

## MANNER AND MEANS OF THE CONSPIRACY

47.    Acting interdependently, MCPHEE and POSEY, together with others known and unknown to the Grand Jury, sought to accomplish the object of the conspiracy with the manner and means alleged in paragraphs 24 through 43 above, among others.

In violation of Title 18, United States Code, Section 1349.

### COUNTS 6 – 11
### 18 U.S.C. §§ 1957(a) & 2
(Money Laundering & Aiding and Abetting)

48.    The allegations set forth in paragraphs 1 through 21, 23 through 43, and 45 through 47 of this Indictment are re-alleged and incorporated as if set forth fully herein.

49.    On or about the dates listed in the table below, in the District of Colorado and elsewhere, defendants TIMOTHY A. MCPHEE and HEATH J. POSEY did knowingly engage and attempt to engage in a monetary transaction, and aided and abetted in the same, affecting interstate and foreign commerce, and by, through and to a financial institution, in criminally derived property of a value greater than $10,000, which property was derived from specified unlawful activity, namely, the Wire Fraud offenses in violation of Title 18, United States Code, Sections 1343 and 2 alleged in Counts 1 through 4 above,

as specified in the table below.

| Count | Approx. Date | Approx. Amount | Description of Transaction |
|---|---|---|---|
| 6 | 10/6/2023 | $179,655 | Transfer from the ROI CASH FLOW FUND reserve account at Bank B (x5936) to the MDH FAMILY TRUST account at Bank B (x4526), causing an interstate wire |
| 7 | 11/1/2023 | $189,042 | Transfer from the ROI CASH FLOW FUND reserve account at Bank B (x5936) to the MDH FAMILY TRUST account at Bank B (x4526), causing an interstate wire |
| 8 | 11/30/2023 | $688,000 | Transfer from the ROI CASH FLOW FUND reserve account at Bank B (x5936) to the MDH FAMILY TRUST account at Bank B (x4526), causing an interstate wire |
| 9 | 12/1/2023 | $189,750 | Transfer from the ROI CASH FLOW FUND reserve account at Bank B (x5936) to the MDH FAMILY TRUST account at Bank B (x4526), causing an interstate wire |
| 10 | 2/7/2024 | $371,000 | Transfer from the ROI CASH FLOW FUND account at Bank C (x1240) to the OPUS ADMINISTRATION SERVICES LLC account at Bank C (x1410), causing an interstate wire |
| 11 | 2/27/2024 | $100,000 | Transfer from the ROI CASH FLOW FUND account at Bank C (x1240), to the OPUS ADMINISTRATION SERVICES LLC account at Bank C (x1410), causing an interstate wire |

In violation of Title 18, United States Code, Sections 1957(a) and 2.

## COUNT 12
**18 U.S.C. § 1957(a)**
(Money Laundering)

50.    The allegations set forth in paragraphs 1 through 21, 23 through 43, 45 through 47, and 49 of this Indictment are re-alleged and incorporated as if set forth fully herein.

51.    On or about November 30, 2023, in the District of Colorado and elsewhere,

14

defendant TIMOTHY A. MCPHEE did knowingly engage and attempt to engage in a monetary transaction affecting interstate and foreign commerce, and by, through and to a financial institution, in criminally derived property of a value greater than $10,000, which property was derived from specified unlawful activity, namely, the Wire Fraud charges in violation of Title 18, United States Code, Sections 1343 and 2 alleged in Counts 1 through 4 above. Specifically, MCPHEE transferred and caused to be transferred approximately $688,000 from the MDH FAMILY TRUST account at Bank B (x4526) to a cryptocurrency brokerage firm, causing a foreign wire.

In violation of Title 18, United States Code, Section 1957(a).

## NOTICE AND ALLEGATION OF ENHANCED PENALTY FOR OFFENSE COMMITTED WHILE ON RELEASE
### 18 U.S.C. § 3147(1)

52.    The allegations set forth in paragraphs 1 through 21, 23 through 43, 45 through 47, 49, and 51 of this Indictment are re-alleged and incorporated as if set forth fully herein.

53.    Defendant TIMOTHY A. MCPHEE was on release pursuant to an order dated September 25, 2023, from United States Magistrate Judge Susan Prose in the District of Colorado in the case of *United States v. Larry Conner, et al.*, Criminal Action No. 23-CR-390-RMR, which order notified said defendant of the potential effect of committing an offense while on pretrial release, stating in part as follows:

> While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.,* in addition to) to any other sentence you receive.

On or about the dates set forth above as alleged in Counts 4 through 12 of this

15

Indictment, MCPHEE committed each of the offenses alleged against him in Counts 4 through 12 of this Indictment, and such violations further were in violation of Title 18, United States Code, Section 3147(1).

## FORFEITURE ALLEGATIONS

54.    The allegations contained in Counts 1 through 12 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(a)(1).

55.    Upon conviction of the violations alleged in Counts 1 through 5 of this Indictment involving the commission of violations of Title 18, United States Code, Sections 1343 and 1349, defendants TIMOTHY A. MCPHEE and HEATH J. POSEY shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all of the defendants' right, title and interest in all property constituting and derived from any proceeds the defendants obtained directly and indirectly as a result of such offense, including, but not limited to, a money judgment in the amount of proceeds obtained by the scheme and by the defendants.

56.    Upon conviction of the violations alleged in Counts 6 through 12 of this Indictment involving violations of Title 18, United States Code, Section 1957, defendant TIMOTHY A. MCPHEE shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all of the defendant's right, title and interest in all property, real or personal, involved in such offense, or all property traceable to such

16

property, including, but not limited to, a money judgment in the amount of proceeds obtained by the defendant.

57.    Upon conviction of the violations alleged in Counts 6 through 11 of this Indictment involving violations of Title 18, United States Code, Section 1957, defendant HEATH J. POSEY shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all of the defendant's right, title and interest in all property, real or personal, involved in such offense, or all property traceable to such property, including, but not limited to, a money judgment in the amount of proceeds obtained by the defendant.

58.    If any of the property described above, as a result of any act or omission of the defendants:

        a)    cannot be located upon the exercise of due diligence;
        b)    has been transferred or sold to, or deposited with, a third party;
        c)    has been placed beyond the jurisdiction of the Court;
        d)    has been substantially diminished in value; or
        e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property.

A TRUE BILL:

Ink signature on file in Clerk's Office
FOREPERSON

17

DAVID A. HUBBERT
Deputy Assistant Attorney General
Department of Justice, Tax Division


s/Lauren K. Pope
LAUREN K. POPE
Trial Attorney
Department of Justice, Tax Division
150 M St. NE
Washington, D.C. 20002
(202) 746-9068
Lauren.K.Pope@usdoj.gov

s/Amanda R. Scott
AMANDA R. SCOTT
Trial Attorney
Department of Justice, Tax Division
150 M St. NE
Washington, D.C. 20002
(202) 514-5384
Amanda.R.Scott@usdoj.gov
*Attorneys for the United States*